UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 20-11348-jps |
| | ) | |
| Jonathon Samuel Ethan Sawyer | ) | Chapter 7 |
| *aka* Jonathan Sawyer | ) | |
| | ) | Judge JESSICA E. PRICE SMITH |
| Amelia Lina Zatik | ) | |
| *aka* Amelia Zatik-Sawyer | ) | <u>MOTION OF PNC Bank, National</u> |
| *aka* Amelia Sawyer | ) | <u>Association FOR RELIEF FROM</u> |
| Debtors. | ) | <u>STAY</u> |
| | ) | |
| | ) | PROPERTY DESCRIPTION: |
| | ) | 2017 FORD F150 |
| | ) | VIN #1FTEW1EF7HFC36354 |

PNC Bank, National Association (the "Movant") moves this Court, under Bankruptcy

Code § 361, § 362, § 363, and other sections of Title 11 of the United States Code, and under

Federal Rules of Bankruptcy Procedure 4001 and 6007, and under Local Bankruptcy Rule 4001-

1 for an order conditioning, modifying or dissolving the automatic stay imposed by Bankruptcy

Code § 362., AND FOR ABANDONMENT OF PROPERTY UNDER BANKRUPTCY CODE

§ 554.

<u>MEMORANDUM IN SUPPORT</u>

1.      The Court has jurisdiction over this matter under 28 U.S.C. § 157 and § 1334.

This is a core proceeding under 28 U.S.C. § 157(b)(2).  The venue of this case and this motion is

proper under 28 U.S.C. § 1408 and § 1409.

2.      On February 22, 2019, the Debtor, Amelia Sawyer, obtained a loan from PNC

Bank, National Association, in the amount of $26,985.74. Such loan was evidenced by a

Consumer Loan and Security Agreement dated February 22, 2019 (the "Note"), a copy of which

is attached as Exhibit A.

3.      To secure payment of the Note and performance of the other terms contained in it, the Debtor, Amelia Sawyer, executed a Consumer Loan and Security Agreement in favor of Amelia Sawyer dated February 22, 2019 (the "Security Agreement").  The Security Agreement granted a lien on the Personal Property, 2017 FORD F150 VIN #1FTEW1EF7HFC36354, owned by Amelia Sawyer (the "Collateral").  The Collateral is more fully described in the Security Agreement (check one):

☐      attached as Exhibit B;

OR

☒      contained in the Note, attached as Exhibit A.

4.      The lien created by the Security Agreement was duly perfected by (check all that apply):

☐      Filing of the Security Agreement in the office of the _____ County Recorder on _____.

☐      Filing of the UCC-1 Financing Statement in the office of _____ on <DATE>.

☒      Notation of the lien on the Certificate of Title.

☐      Other (state with particularity)_____.

A copy of the recorded Security Agreement, UCC-1 Financing Statement, Certificate of Title or other document, as applicable, is attached as Exhibit B.  Based on the Certificate of Title, the lien is the 1st lien on the Collateral.

5.      The entity in possession of the original Note as of the date of this motion, is PNC Bank, National Association.

6.      The entity servicing the loan is PNC Bank, National Association.

7.      The Note was transferred, as evidenced by the following:

a. If the Collateral is real estate:

 i. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the original lender:

  ☒ N/A.

  OR

  ☐ By endorsement on the Note,
   payable to_____.

  OR

  ☐ By blank endorsement on the Note.

  OR

  ☐ By allonge attached to the Note,
   payable to_____.

  OR

  ☐ By blank allonge, attached to the Note.

  OR

  ☐ The Note is not endorsed to the Movant, or is not endorsed in blank with an allegation that the Movant is in possession of the original Note. The factual and legal basis upon which the Movant is entitled to bring this motion is (explain with particularity and attach supporting documentation):

   _____

   _____

   _____.

OR

☐     By endorsement on the Note or by allonge attached to the Note, through a power of attorney. If this box is checked, a copy of the power of attorney is attached as Exhibit C. Explain why it provides Movant the authority to endorse the Note:

_____

_____

_____.

     \<ii.     Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the \<FIRST TRANSFEREE\> to \< _____\> [ADD ADDITIONAL TRANSFER SECTIONS AS APPROPRIATE. THE LAST TRANSFEREE MUST BE THE MOVANT].\>

     \<iii.    A court has already determined that Movant has the ability to enforce the Note with a judgment dated \<INSERT DATE OF JUDGMENT\> in the \<INSERT NAME OF COURT\>. A copy of the judgment is attached at Exhibit \<_\>.\>

     \<iv.    Other_____ [explain].\>

b.     If the Collateral is not real estate (check one):

☐     N/A.

OR

☒     From the original lender to PNC Bank, National Association by Consumer Loan and Security Agreement.

8.     The Security Agreement was transferred as follows (check one):

☒     N/A.

OR

☐     From the original lender, mortgagee, or mortgagee's nominee **by way of Assignment of Mortgage executed on \<DATE\> and recorded on \<DATE\>**to \<FIRST TRANSFEREE\>. The transfer is evidenced by the document(s) attached to this Motion as Exhibit C.

9.	The 2020 value of the Collateral is $ 36,800.00.  This valuation is based on Black Book.

10.	As of August 31, 2020, there is currently due and owing on the Note the outstanding principal balance of $ 19,926.93, plus interest accruing thereon at the rate of 4.2400% per annum [$2.31 PER DAY] from August 31, 2020, as described in more detail on the worksheet.  The total provided in this paragraph cannot be relied upon as a payoff quotation.

11.	The amount due and owing on the Note as set forth in paragraph 10 DOES NOT include a credit for the sum held in a suspense account by the Movant. The amount of the credit is <N/A>.

12.	Other parties known to have an interest in the Collateral besides the debtor(s), the Movant, and the trustee are (check all that apply):

☒	N/A.

☐	The <COUNTY> County Treasurer, for real estate taxes, in the amount of $ <AMOUNT>.

☐	<CO-OWNERS, IF APPLICABLE, STATE NAME>.

☐	<ANY OTHER PARTY HOLDING A LIEN, IF APPLICABLE, IN THE AMOUNT OF $_____  [ADD ADDITIONAL PARTIES AS APPROPRIATE]>

13.	The Movant is entitled to relief from the automatic stay under Bankruptcy Code § 362(d) for these reason(s) (check all that apply):

☐	Debtor has failed to provide adequate protection for the lien held by the Movant for these reasons:  <EXPLAIN>                        .

☐	Debtor has failed to keep the Collateral insured as required by the Security Agreement.

☐	Debtor has failed to keep current the real estate taxes owed on the Collateral.

☒ **As of August 31, 2020** Debtor has failed to make periodic payments to Movant since the commencement of this bankruptcy case for the months of May 2020 - August 2020, which unpaid payments are in the aggregate amount of $2,451.56, **less suspense of $0.00, for a total postpetition amount due of $2,451.56** through August 31, 2020. The total provided in this paragraph cannot be relied upon as a post-petition reinstatement quotation. **An additional payment will come due on September 13, 2020 and on the 13th day of each month until the loan is paid in full.**

☐ Debtor is delinquent in funding the plan, and therefore the trustee has failed to make periodic payments to Movant since the commencement of the bankruptcy case for the months of <STATE EACH MONTH AND YEAR>, which unpaid payments are in the aggregate amount of <AMOUNT> through <DATE>. The total provided in this paragraph cannot be relied upon as a postpetition reinstatement quotation.

☐ Debtor has no equity in the Collateral, because the Collateral is valued at _____, and including the Movant's lien, there are liens in an aggregate amount of _____ on the Collateral.

☐ Other cause (set forth with specificity):_____

15. Movant has completed the worksheet, attached as Exhibit C.

16. Movant is entitled to an order directing the trustee to abandon the Collateral under

11 U.S.C. §554(b) for these reasons (check all that apply):

☐ The Collateral is burdensome to the estate because

_____.

☒ The Collateral is of inconsequential value and benefit to the estate because upon liquidation of the Collateral no proceeds will remain for the benefit of the estate.

WHEREFORE, Movant prays for an order from the Court:

(a) granting Movant relief from the automatic stay of Bankruptcy Code § 362 to permit Movant to proceed under applicable nonbankruptcy law; AND

(b) AUTHORIZING AND DIRECTING THE CHAPTER 7 TRUSTEE TO ABANDON THE COLLATERAL UNDER BANKRUPTCY CODE § 554.

Respectfully submitted,

/s/ Seth Greenhill
Seth Greenhill, Esq.
Ohio Bar # 99380
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
Seth.Greenhill@padgettlawgroup.com
*Attorney for Creditor*

# EXHIBIT A

 **PNC BANK**

### Consumer Loan and Security Agreement

Date **02/22/2019**
Debtor(s) **AMELIA SAWYER**
Address **18485 AMBER TRAILS**
**CHAGRIN FALLS**                    **OH 44023**

(1)    **DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the person(s) using the Check (as that term is defined below).  "PNC," "we," "our" or "us" means PNC Bank, National Association, 222 Delaware Ave., Wilmington, Delaware 19899, and its successors and assigns.  "Check" means the PNC Check Ready check that is subject to the terms of, and has been provided with, this Agreement. "Agreement" means this consumer loan and security agreement. "Loan" means the loan evidenced by this Agreement. "Property" means the property purchased with the proceeds of the Check. "Disclosure Statement" means the applicable federal truth-in-lending disclosure statement we have provided to you. **By using your Check, you agree to all the terms and conditions of this Agreement.** Our typewritten name in this Section 1 will constitute our signature for purposes of this Agreement. The section headings of this Agreement are a table of contents and not contract terms.

(2)    **TERMS OF REPAYMENT.** Upon using your Check, you, jointly and severally, agree to pay to us the principal sum set forth on your Check, plus interest on the outstanding amount of the principal sum and other sums owed under this Agreement at the applicable per annum rate set forth in the "PNC Check Ready Interest Rate Addendum," attached hereto and incorporated herein by reference. Principal and interest owing under this Agreement shall be payable in        **48** monthly installments beginning on or about the forty-fifth (45th) day after the day we pay your Check. Each monthly installment shall be in an equal amount except that the final monthly installment shall be an amount equal to all unpaid principal and other amounts owed under this Agreement and all accrued and unpaid interest thereon. An estimate of your payment schedule is set forth in the Disclosure Statement. **You agree that all past due and unpaid charges owed pursuant to this Agreement, including past due interest, may be capitalized and earn interest by adding such charges to the principal balance of your Loan.** Interest will accrue from the date we pay your Check and be computed on a simple interest basis based upon a 365-day year, but calculated on actual days. Accordingly, your payment history could affect the amount you will pay under this Agreement.

(3)    **LOAN USE.** You agree to use your Check only for the purchase of one (1) new or used automobile from a U.S. licensed automobile dealer and for any tax, title, license, registration or other filing fees, or extended service warranty contract fees related to such purchase. Your Check may not be used in an amount greater than the maximum check amount, or less than the minimum check amount, for which you have been approved, or in any event in excess of     **115**          % of the sales price for a new automobile or      **115**      % of the sales price for a used automobile or used to purchase a commercial vehicle (including one to be used as a taxi or limousine) which includes but not limited to commercial series trucks, commercial cargo and passenger vans, cab without chassis (cab must have bed), trailer, boat, motorcycle or recreational vehicle. In this Agreement, the term "sales price" means MSRP (new) or NADA retail value (used) for the automobile and includes tax, title, license and any extended service warranty contract fee. The model year of the vehicle cannot be older than      **2011**          and cannot have more than  **80,000**   miles at the time of purchase*.  The total cost of an extended service warranty is recommended to not exceed $3,500. You agree that if you do not comply with any of the terms set forth in this Section 3, we may refuse to honor your Check when it is presented to us for payment. **Note - We will separately pay a PNC franchise dealer a fee for assisting us in perfecting our security interest in the vehicle being purchased with the loan proceeds. You will not be charged any portion of this fee.**

In addition to the other limitations set forth in this Agreement, your Check may not be used to purchase a motor vehicle having a title containing any "Defects". As used herein, a "Defect" means a title that has been branded as salvage, rebuilt or similar event, or one which includes any designation such as "R" or its equivalent, that would indicate substantial prior damage (from collision, flood or otherwise) to the underlying motor vehicle being used as security for the loan.

*Mileage maximum of up to 100,000 available for applicant(s) who meet one of the following requirements:
◆ Credit score (as provided within this packet) greater than or equal to 700 and loan to value less than or equal to 100%.
◆ Credit score (as provided within this packet) greater than or equal to 725 and a loan to value less than or equal to 110%.

(4) **LATE CHARGE; RETURNED PAYMENT CHARGE; DEFERRAL CHARGE; OTHER CHARGES.** If all or any portion of any monthly payment is not received within 15 days after it is due, you agree to pay a late charge. This late charge will be the greater of $40 or 10% of the unpaid portion of the monthly payment. If any check, draft, negotiable order of withdrawal, other similar instrument, or an electronic debit entry (autopay), is returned to us unpaid for any reason, you agree to pay a returned payment charge of $30. If we, in our sole discretion, permit you to defer any payment(s), you agree to pay a deferral charge for each payment deferred. We will continue to earn interest on the unpaid principal balance of your Loan. You agree that, unless otherwise prohibited by applicable law, we also may charge you a fee, not otherwise enumerated herein, for services we perform for you that you have requested.

(5) **PROPERTY INSURANCE.** You are required to insure the Property until this Loan is paid in full or we sell the Property. You have the risk of loss of the Property and will be responsible for its loss or damage. **You agree to obtain primary insurance coverage, or furnish existing insurance, from anyone you want that is acceptable to us (provided that the insurer is authorized to do business, or is an eligible surplus lines carrier, in the state where the Property is titled) in the following types and amounts with us listed as loss payee:** (a) theft, collision and comprehensive insurance, with no more than $1,000 deductible; and (b) all other insurance required by applicable law. All insurance must be for an amount at least equal to the outstanding indebtedness owed under this Agreement or the replacement cost of the Property, whichever is less. All insurance proceeds we receive (including a refund of premium) may at our option reduce the indebtedness owed under this Agreement or be used to repair or replace the Property. If the Property is lost, stolen or destroyed, you must still pay us whatever you owe under this Agreement. You also assign to us any other insurance proceeds related to the Agreement or our interest in the Property. You must promptly provide us with evidence of insurance upon our request, and all policies must provide us with a minimum of 10 days' prior notice of cancellation or material change in coverage. Our mailing address for purposes of this Section is: PNC Bank, National Association, P.O. Box 808, Pittsburgh PA 15230-0808.

You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and to receive and sign all related papers and documents on your behalf, including checks, drafts and other items payable to you. Any insurance carried by us will be non-contributing. Unless you provide us with evidence of the insurance coverage required by this Agreement, we may purchase insurance at your expense to protect our interest in the Property. The insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by this Agreement. If we purchase insurance for the Property, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the

total outstanding balance of your Loan. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own. Unless prohibited by applicable law, any amounts we advance on your behalf may be added to the balance on which we impose interest as provided in this Agreement. Subject to any limitations under applicable law, such amounts will be payable by you, as we alone may direct, as follows: (a) immediately on demand, (b) by increasing the amount of the monthly payment, (c) by increasing the number of monthly payments, or (d) at the end of the term of the Loan. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with us.  This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. **NO PHYSICAL DAMAGE OR LIABILITY INSURANCE FOR BODILY INJURY OR PROPERTY DAMAGE TO OTHERS IS INCLUDED IN THIS LOAN.**

(6)   **PREPAYMENT.** You may prepay the principal sum owed under this Agreement in whole or in part at any time without penalty.

(7)   **SECURITY AGREEMENT.** To the extent permitted by law, you grant us a security interest and waive all applicable property exemptions in the following property to secure performance of your obligations under this Agreement and your obligations under any other agreement with us or other affiliates:  (a) the Property, including all equipment, parts, accessories and personal property that is an accession of the Property; (b) proceeds and unearned premiums of any Property insurance; (c) all of your deposit accounts with us or our affiliates (except individual retirement accounts); and (d) substitutions, replacements, products and proceeds of the foregoing. If we have a prior lien on any dwelling or real estate that you own as security for future obligations, we waive such security as to this Agreement only. Upon our request, you will deliver the certificate of title or any other documents that are necessary for us to perfect our security interest or, if applicable, you will follow our instructions to perfect our security interest in the Property. You will defend at your expense our security interest in the Property. To the extent permitted by law, you agree to pay all actual costs imposed to release our interests in the Property.

(8)   **PROPERTY MAINTENANCE AND USE.** You will keep the Property properly licensed and registered at all times until this Loan is paid in full. You must title and register the Property, within 15 days of using your Check, at your cost. You will keep the Property free from all liens, encumbrances, fines and adverse claims, except for those permitted by us in writing. You will permit us to inspect the Property at a place designated by us that is reasonably convenient. If the Property has an odometer, you agree to certify to us in writing the accurate odometer reading upon our request, to immediately notify us if the odometer malfunctions and to have the defective odometer repaired or replaced at your expense. You will not use, or permit others to use, the Property: (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty; (c) outside the United States without our prior written consent; or (d) outside the state where first titled or registered for more than 30 days without our prior written consent. If we consent to such use of the Property, you will pay for all fees and costs associated with said use, including all fees for new title, license, registration requirements, perfection of our security interest and a $20 administration fee where permitted by applicable law.

(9)   **DEFAULT. Subject to any limitations under applicable law,** you will be in default under this Agreement if: (a) you fail to make any payment or fail to pay any other amount owing under this Agreement when due; (b) you fail to meet any of your obligations under this Agreement or under any other agreement with us or our affiliates; (c) a bankruptcy petition is filed by or against you; (d) you have provided false or misleading information to us; (e) you die or are declared incompetent or incapacitated; (f) the Property or any other property in which we or our affiliates possess a security interest is lost, stolen, destroyed, determined by us to be uninsurable for use, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings; (g) a judgment is rendered against you in a court or arbitration proceeding; (h) you do not pay any of your debts as they come due; or (i) the title to the motor vehicle used as security for this loan contains any Defects.

(10)  **REMEDIES UPON DEFAULT.** If you are in default under this Agreement, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following **subject to any limitations under applicable law:** (a) accelerate the entire balance owing under this Agreement without demand or notice **(unless such demand or notice is required by applicable law),** which entire balance will be immediately due and payable.  You will pay us interest on this balance at the rate set forth in this Agreement, including after default and acceleration. However, if we obtain a judgment against you for any amount owing under this Agreement, the amount of such judgment will bear interest at the rate of 25% per annum, or at the highest rate permitted by law, whichever is less, from the date of judgment; (b) demand that you make the Property available to us at a time and place designated by us that is reasonably convenient. You agree to comply with such demand; (c) repossess the Property without demand or notice **(unless such demand or notice is required by applicable law)**. We may enter the premises where the Property is located and repossess it without a breach of the peace. We may repossess the Property with or without resort to judicial process. We may use the Property's license plates to transport the Property to a storage facility. Thereafter, we may sell, lease, or otherwise dispose of the Property. Our disposal of the Property will not release you from any of your obligations to us, and you will pay us any balance owing under this Agreement.  We will not be responsible for any personal items in or on repossessed Property including any license plates; (d) recover all expenses related to retaking, holding, preparing for sale and selling the Property, including travel and transportation expenses we incur in taking the vehicle and expenses paid to persons not related to us as a direct result of taking, holding, cleaning, restoring and repairing the vehicle, and reasonable collection costs, attorneys' fees, legal expenses as permitted by 11 U.S.C. 506 and any other applicable law except that if you are a resident of West Virginia you will not pay attorneys fees or court costs; (e) set-off any of your deposit accounts with us or our affiliates (except individual retirement accounts) without demand or notice; and/or (f) use electronic means to exercise our rights in the Property. Subject to any limitations under applicable law, if you are in default under this Agreement, you irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to execute any and all documentation necessary to repossess or dispose of the Property, including any documents necessary to transfer ownership of the Property.

(11)  **CHOICE OF LAW.** The provisions of this Agreement will be governed by (i) federal laws and regulations and (ii) the laws of Delaware to the extent Delaware laws are not preempted by federal laws or regulations and without regard to conflict of law principles.  For Maryland Residents, only to the extent federal law and the laws of the State of Delaware do not apply, this Agreement is governed by Title 12, Subtitle 10 of the Maryland Commercial Law Article.

(12)  **PRIVACY.**  You authorize us to obtain credit reports on you from time to time at our discretion at any time there is an unpaid balance on the Loan. You authorize us to obtain information about you from the bureau of motor vehicles or similar entity. You agree that you and we have an established business relationship, and unless otherwise prohibited by law, we may contact you to offer products and services that we believe may be of interest to you. We and/or our affiliates may contact you by telephone and with an automated dialing and announcing device or by fax at any telephone number you have given to us, including the telephone number on your application, or by email or other form of electronic communication and we may monitor telephone calls with you to assure quality service. In addition, by using your Check, you are confirming that you have expressly consented to receive calls to your cell phone, made by us and/or our affiliates and/or our affiliates' representatives for any purpose, using a prerecorded or other voice message or an automatic dialing system, except as prohibited by applicable law.

(13) **PAYMENTS AND CORRESPONDENCE.** All payments must be in lawful money of the United States. Our failure or delay in providing you coupon books, billing statements or other payment instructions will not relieve you of your obligations under this Agreement. Except as otherwise specified, all notices, payments marked with the words "Paid in Full" or other similar language, and correspondence to us must be sent to PNC Bank, ███████████,
████████████████████████████████

If your payment is sent to any other address, we may accept the payment without losing any of our rights. We may accept late payments or partial payments without losing any of our rights. Payments, including any prepayments, and all other funds shall be applied in any manner we, in our sole discretion, decide. Except as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records. You will provide us with 10 days' prior written notice of any change in any information contained in your application including a change in your name, address or location of the Property.

(14) **ADDITIONAL TERMS AND CONDITIONS.** You agree that: (a) you may not sell or assign this Agreement, the Property or any of the benefits or obligations related thereto without our prior written consent. We own this Agreement and may assign this Agreement or any of its benefits or obligations at any time without your consent; (b) this Agreement is between you and us and except for successors or assigns as provided for by this Agreement, this Agreement will not confer any rights upon any third party; (c) our rights and remedies in this Agreement are not exclusive; (d) the provisions of this Agreement are only to the extent permitted by applicable law. Any part of this Agreement that cannot be enforced will be void, but the remaining parts will remain in effect; (e) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default); waiver, delay and all other notices or demands in connection with this Agreement; (f) you waive all defenses relating to impairment of recourse or collateral; (g) we can change any term of this Agreement, release any collateral or release any obligor by agreeing with any one party without notifying or releasing any other party; (h) we can correct errors in this Agreement upon notice to you, even if such errors are contract terms, and you agree to be bound by such corrections. Upon our request, you will promptly re-execute this Agreement to correct errors in the Agreement. You can change any term of this Agreement only in a writing signed by us; (i) this Agreement describes all agreements between you and us with respect to the Loan and Property, and there are no other agreements; (j) if you are a natural person, you are competent to enter into this Agreement, and if you are other than a natural person, the person signing on behalf of you represents that (s)he is authorized to enter into and execute this Agreement; (k) we may waive or delay enforcing any of our rights without losing such rights; (l) this Agreement will be binding and inure to the benefit of you and us and our respective successors and assigns; (m) we are authorized to sign on your behalf any document required to enforce our interests under this Agreement; (n) if this Loan is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or regulations. Disclosures included with this Agreement but not required by law are not an admission or waiver of rights by us; (o) all actions under this Agreement requiring our consent are at our sole discretion, and such consent may be withheld for any reason; (p) you will pay all amounts indicated in the Itemization of the Amount Financed in the Disclosure Statement. Such amounts will be nonrefundable to the extent permitted by law; (q) all amounts owed under this Agreement shall be without relief from valuation and appraisement laws; (r) we may retain this Agreement in an electronically or optically imaged form. If we do so, such electronically or optically imaged form, if designated as the original by us, shall constitute the original of this Agreement and may be relied on in full by all parties to the same extent as though it were the original; and (s) we are not a seller, supplier, merchant or warrantor of the Property or any services you purchase related to the Property and we are not responsible, therefore, for any claims relating to the Property or such services.

**(15)  ARBITRATION PROVISION. READ THIS ARBITRATION PROVISION CAREFULLY: IT WILL IMPACT HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.** Under the terms of this Arbitration Provision, and except as set forth below, Claims (as defined below) will be resolved by individual (and not class-wide) binding arbitration in accordance with the terms specified herein, if you or we elect it.

**YOUR RIGHT TO OPT OUT; EFFECT OF ARBITRATION.**
**This Arbitration Provision will apply to you and us and to your account as of the date of this Agreement, unless you opt out by providing proper and timely notice as set forth below. If a Claim is arbitrated, neither you nor we will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action, private attorney general or other representative action in court or in arbitration; or (4) join or consolidate a Claim with those of any other person.**

**This Arbitration Provision will survive the termination of the Agreement. See further details below.**

**(a) Definitions of words used in this Arbitration Provision. A "Claim" subject to arbitration is any demand, cause of action, complaint, claim, asserted right, or request for monetary or equitable relief, whether past, present or future, and based upon any legal theory, including contract, tort, consumer protection law, fraud, statute, regulation, ordinance, or common law, which arises out of or relates to this Agreement, your account, the events leading up to your becoming a Borrower (for example, advertisements or promotions), any feature or service provided in connection with your account, or any transaction conducted with us related to your account.**

Notwithstanding the foregoing, the term "Claim" excludes: (a) any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof, including the Class Action Waiver below (a court will decide such disputes or controversies); (b) any individual action brought by either party in small claims court or your state's equivalent court, unless such action is transferred, removed or appealed to a different court: and (c) any self-help repossession or replevin action undertaken by the Bank for the purpose of securing its interest in the Collateral (if any).

**"Account" means the loan evidenced by this Agreement.**

**(b)  Arbitration Procedures**
**(i)  Agreement to Arbitrate Claims.** Except if you opt out as provided below, you or we may elect to arbitrate any Claim.
**(ii)  Electing arbitration.** If you or we elect to arbitrate a Claim, the party electing arbitration must notify the other party in writing (the "Notice"). Your Notice to us shall be sent to PNC Bank, N.A., Legal Department, One PNC Plaza (21st Floor), 249 Fifth Avenue, Mailstop: P1-POPP-21-1, Pittsburgh, PA 15222, Attn: Notice of Arbitration (the "Notice Address"). Our Notice to you shall be sent to the most recent address for you in our files. Any arbitration hearing that you attend will take place in a venue in the county where you reside unless you and we agree otherwise. If a party files a lawsuit in court asserting a Claim and the other party elects arbitration, such Notice may be asserted in papers filed in the lawsuit (for example, a motion by the defendant to compel arbitration of Claims asserted by the plaintiff in a lawsuit filed in court). In the event that a court grants a motion to compel arbitration, either party may commence the arbitration proceeding in accordance with the rules and procedures of the arbitration administrator specified in this paragraph. The institution and maintenance of an action for judicial relief to obtain possession of the vehicle, to obtain a monetary judgment for a deficiency, or to enforce the security agreement, or the use of any lawful self-help remedy such as repossession, shall not constitute a waiver of the right of any person to compel arbitration including the filing of a counterclaim by you.

**(iii)  Arbitration costs.** We will pay the filing, administrative and/or arbitrator's fees ("Arbitration Fees") that we are required to pay pursuant to the administrator's rules or the law. In addition, with respect to Arbitration Fees that you are required to pay under the administrator's rules in connection with an individual arbitration you have commenced against us, (i) if the amount of your Claim does not exceed $75,000 and we receive a written request by you at the Notice Address, we will pay or reimburse you for your payment of said Arbitration Fees; (ii) if the amount of your Claim exceeds $75,000 and we receive a written request by you at the Notice Address, we will consider paying said Arbitration Fees if you are unable to pay them and cannot obtain a waiver or reduction of them from the arbitration administrator.

**(iv)  Arbitration administrator and rules.** The party electing arbitration must choose between one of two administrators: (1) the American Arbitration Association ("AAA"), or (2) JAMS. The administrator chosen will apply its rules and/or codes of procedures in effect at the time arbitration is elected. You may obtain a copy of the rules/codes, and more information about initiating an arbitration, by (i) contacting AAA at 1-800-778-7879 or visiting www.adr.org, or (ii) contacting JAMS at 1-800-352-5267 or visiting www.jamsadr.com. The arbitrator is bound by the terms of this Agreement. If neither AAA nor JAMS can serve, the parties may agree on another administrator, or a court may appoint one.

**(v)  What law the arbitrator will apply.** The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court, or by state or local laws that relate to arbitration proceedings. However, the arbitrator will apply the same statutes of limitation and privileges that a court would apply if the matter were pending in court. In determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the Federal Arbitration Act (FAA) that would apply if the matter had been brought in court.

**(vi)  The arbitrator's decision and award; attorney fees.** At the timely request of either party, the arbitrator shall provide a brief written explanation of the grounds for the decision. The arbitrator may award any damages or other relief or remedies that would apply under applicable law, as limited in paragraph (b)(5) above, to an individual action brought in court. In addition, with respect to claims asserted by you in an individual arbitration, we will pay your reasonable attorney, witness and expert fees and costs if and to the extent you prevail, or if applicable law requires us to do so.

**(vii)  Effect of arbitration Award; appeal.** The arbitrator's award shall be final and binding on all parties, except for any right of appeal provided by the Federal Arbitration Act.

**(c)  Federal Arbitration Act**
This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Provision.

**(d)  Class Action Waiver**
**If either you or we elect to arbitrate a Claim, neither you nor we will have the right: (1) to participate in a class action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member; or (2) to join or consolidate Claims with claims of any other persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision or to issue any relief that applies to any person or entity other than you and/or us individually. The parties acknowledge that the Class Action Waiver is material and essential to the arbitration of any Claims and is non-severable from this Arbitration Provision. If the Class Action Waiver is voided, found unenforceable, or limited with respect to any Claim for which you seek class-wide relief, then the parties' Arbitration Provision (except for this sentence) shall be null and void with respect to such Claim, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. However, the Arbitration Provision shall remain valid with respect to all other Claims. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.**

**(e)    Conflicts; Severability; Survival**

This Arbitration Provision is intended to be broadly interpreted. In the event of a conflict between the provisions of this Arbitration Provision and the AAA or JAMS rules, or any other terms of the Agreement, the provisions of this Arbitration Provision shall control. If any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder shall be enforceable, except as provided by the Class Action Waiver. This Arbitration Provision shall survive (1) the closing of your account and the termination of any relationship between us, including the termination of the Agreement, and (2) survive any bankruptcy to the extent consistent with applicable bankruptcy law.

**(f)    Right To Opt Out**

You may opt out of this Arbitration Provision by calling us toll free at 1-855-762-2432, or by sending us a written notice which includes your name(s), Account number, and a statement that you (both or all of you, if more than one) do not wish to be governed by the Arbitration Provision in your Account Agreement (the "Opt Out Notice"). To be effective, your written Opt Out Notice must be (1) sent to us by first class mail or certified mail, return receipt requested, at PNC Bank, Attn: PNC Bank, National Association, P5-PCLC-01-E, P.O. Box 1366, Pittsburgh, PA 15230-1366, and (2) signed by you (or both of you, if more than one) including the information set forth above. We must receive your telephone call or written notice within forty-five (45) days after either (i) the date this Arbitration Provision was delivered or otherwise made available to you, in paper or electronic form, or (ii) the day you open your Account, whichever is later. Your decision to opt out will not affect any other provision of this Account Agreement.

**(16)    NOTICES. THE FOLLOWING NOTICES ARE GIVEN BY US ONLY TO THE EXTENT NOT INCONSISTENT WITH 12 U.S.C. SECTION 85 AND APPLICABLE FEDERAL REGULATIONS AND OPINIONS AND THE CHOICE OF LAW PROVISION SET FORTH HEREIN (WITH RESPECT TO WHICH WE EXPRESSLY RESERVE ALL RIGHTS).**

**NOTICE TO COSIGNER**

**You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.  You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and after proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law).  The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.**

**NOTICE TO BORROWERS**

**A negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to PNC Bank, P.O. Box 3180, Pittsburgh, PA 15230-3180.**

**Florida: You may purchase or provide the required insurance from any insurance provider that is reasonably acceptable to us. Your choice of an insurance provider will not affect the credit decision. We may impose reasonable requirements concerning the extent of coverage and the financial soundness of the insurance provider.**

**Kansas:**
**NOTICE TO CONSUMER:** 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty.

**Missouri: Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**Texas: This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence or prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account we will ask you for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

PNC Bank, National Association

Ohio

AMELIA SAWYER

████4856

**⊘ PNC BANK**

8-71/430

Check No.: ██████████

Issue Date: 02/22/2019

Void After: 3/24/2019

**PAY TO THE ORDER OF** _INFINITI OF BEACHWOOD_ $ 26,985.74

PAYABLE TO ANY LICENSED NEW OR USED AUTOMOBILE DEALERSHIP IN THE UNITED STATES

_Twenty Six Thousand Nine Hundred Eighty Five_ & 74/100 ——— Dollars

NOT VALID FOR LESS THAN $ 7,500.00     or MORE THAN $ 28,000.00

Automobile cannot be older than model year 2011 and mileage criteria applies.

VIN: | 1 | F | T | E | W | I | E | F | 7 | H | F | C | 3 | 6 | 3 | 5 | 4 |     MILEAGE: | 4 | 4 | 5 | 3 | 1 | 8 |

By using this check, you acknowledge having received, and agree to be bound by, the PNC Bank Check Ready Consumer Loan and Security Agreement delivered to you by PNC Bank, National Association, bearing the reference no. above.

PNC Bank: 1-866-522-2517

AMELIA SAWYER

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ ALL DOCUMENTS DELIVERED WITH THIS CHECK BEFORE USING THIS CHECK.

RLACMS2B-0818

Endorse Here

x _____

FOR DEPOSIT ONLY
JDS BEACHWOOD LLC
INFINITI OF BEACHWOOD
4566

Do Not Write, Stamp or Sign Below This Line
~ for Financial Institution Use ~

Your negotiation of this check constitutes acceptance of the
Endorsement Agreement below.

Model/Trim Package

Mileage                    New/Used

Dealer Name & Phone

PNC Dealer #

ENDORSEMENT AGREEMEN[T]

By negotiating this check, the seller of the goo[ds]
with this check ("you") unconditionally and co[n-]
represents warrants and guarantees to PNC [...]
Association (N.A.) that wit[...] to such pu[...]
check was used to purcha[...] fair mark[...]
or used automobile ("veh[icle]... ou have rea[...]
in full for the vehicle and h[...]
purchase of the vehicle, [...]
has been, or promptly will [...]
the manner necessary to p[...]
PNC Bank, N.A. in the veh[icle]...
title will show no other ow[ner]...
on the front of the check d[...]
Association." (iv) the cert[ificate...]
Defects, (vi) each signat[ure]...
genuine, (vii) there are n[...]
would impair the validity [...]
documents related to the s[...]
(viii) you have complied w[...]
Instructions" attached to t[...] and all applicable laws

Federal Rea__ board of Governor's Reg Cu__

 PNC BANK

Date: **02/22/2019**
Debtor(s): **AMELIA SAWYER**

## PNC CHECK READY
## INTEREST RATE ADDENDUM

This PNC Check Ready Interest Rate Addendum is incorporated into and made a part of the accompanying PNC Check Ready Consumer Loan and Security Agreement ("Agreement"). Unless otherwise specified, all terms used herein have the same meaning as in the Agreement.

The per annum rate of interest that applies to your Loan will be based on the model year of the Property and the amount of your Check as follows:

| If the model year is: | | And your amount of your Check is: | | Your interest rate is: |
|---|---|---|---|---|
| From **2018** to **2020** | | From **$7,500.00** to **$28,000.00** | | 3.690% |
| From **2017** to **2017** | | From **$7,500.00** to **$28,000.00** | | 3.990% |
| From **2016** to **2016** | | From **$7,500.00** to **$28,000.00** | | 4.290% |
| From **2015** to **2015** | | From **$7,500.00** to **$28,000.00** | | 4.590% |
| From **2014** to **2014** | | From **$7,500.00** to **$28,000.00** | | 4.890% |
| From **2011** to **2013** | | From **$7,500.00** to **$28,000.00** | | 5.190% |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |
| From **N/A** to **N/A** | | From **N/A** to **N/A** | | **N/A** |

**Automatic Payment Plan:** ☐ Not Applicable. ☒ You authorize PNC Bank, N.A. to deduct the payments on this loan from your deposit account number ████████ on each scheduled payment due date.

**Variable Rate Feature.**

**Automatic Payment Plan:** ☐ Not Applicable. ☒ The interest rate on this loan will increase by 0.250 percentage points ("Automatic Payment Plan Discount") if participation in the automatic payment plan is discontinued for any reason, including: (a) if you choose to terminate participation; (b) the deposit account identified above is closed; or (c) if there are not sufficient funds in the account to make the full monthly payment on three payment dates.

**Employee Benefit:** ☒ Not Applicable. ☐ The interest rates include the Employee Benefit Discount because you are a current or retired employee of PNC Bank, National Association and/or its affiliates, subsidiaries and/or parent (certain officers, directors and principal shareholders are not eligible). If you cease to be eligible for the Employee Benefit Discount at any time during the term of this loan, the interest rate will increase. The increased interest rate will be the interest rate (plus the Automatic Payment Plan Discount, if applicable) divided by 95% (the result will then be reduced by the Automatic Payment Plan Discount, if applicable).

**Monthly Payment Changes:** If the interest rate on this loan increases, the payment amount will be increased to an amount calculated so that the loan will be paid in full on the date the final installment payment is due if each payment is made by its due date. We will notify you of the effective date of the new interest rate and amount of the new payment.

PNC Bank National Association
2730 Liberty Avenue
Pittsburgh, PA 15222



February 27, 2019

Amelia Sawyer
18485 Amber Trails
Chagrin Falls, OH 44023

Reference Number: ████4856

 **Congratulations on the purchase of your new vehicle!**

Dear Amelia Sawyer,

Thank you for using your PNC Check Ready check to finance your recent auto purchase. Your loan was established with PNC Bank N.A. on February 27, 2019. We hope you found the process convenient.

**Here's what happened:**

In the Welcome Package we sent you earlier, we provided you with Federal Truth-In-Lending Disclosure Statements. The information that was provided in the Disclosure Statements was estimated based on, among other things, the maximum and minimum loan amounts for which you were approved and stated model years.

**Here are the details of your new PNC loan:**

The following loan payment information reflects the actual amount you borrowed based on the auto you purchased using your PNC Check Ready check:

| | |
|---|---|
| Loan (check) amount: | $26,985.74 |
| Loan Term: | 48 |
| Interest Rate: | 3.990% |
| APR: | 3.995% |
| Monthly Payment: | $610.20 |
| First Payment Due: | April 13,2019 |

Please see your PNC Check Ready Consumer Loan and Security Agreement for the terms and conditions that govern your auto loan.

**Here's what you need to do:**

Based on your selection, you will start to receive either a monthly loan statement or coupon book in the mail with the initial one arriving before your first payment is due, unless you selected automatic payment deduction. Please take note of your first payment due date, which is listed above.

**Here's how to contact us:**

 If you do not receive your coupon book or statement or if you have any questions about your loan, please call us at 1-888-PNC-BANK (1-888-762-2265).

**Thank you for choosing PNC Bank.**

**ISSUING COUNTY** GEAUGA
**ISSUING TITLE OFFICE #** 2801
**RESIDENT COUNTY** GEAUGA

# STATE OF OHIO

**REPLACEMENT**

**TITLE No.** ▮

**ISSUE DATE** 08/17/2020

# EXHIBIT B

| IDENTIFICATION NUMBER | YEAR | MAKE | MAKE DESCRIPTION | MODEL DESCRIPTION | BODY TYPE |
|---|---|---|---|---|---|
| 1FTEW1EF7HFC36354 | 2017 | FORD | FORD | F150 | PT |

| MILEAGE | MILEAGE NOTATION | | PURCHASE PRICE | TAX |
|---|---|---|---|---|
| 45,318 | ACTUAL | | $25,248.00 | $1,704.24 |

**CONVERSION**

**EVIDENCE**
OH-7707910277

**COMMENTS**

**NOTATION(S)**

**OWNER(S)**
AMELIA SAWYER

18485 AMBER TRL
CHAGRIN FALLS, OH 44023

**PREVIOUS OWNER(S)**
INFINITI OF BEACHWOOD

25900 CENTRAL PKWY
BEACHWOOD, OH 44122

**DEALER PERMIT**
ND004091

**FIRST LIENHOLDER**      **DATE OF LIEN** 03/02/2019
P N C BANK, NA

P O BOX 313
WILMINGTON, OH 45177

LIEN DISCHARGE
Lienholder
_____

by:
_____
Authorized Signature          Date

CLERK LIEN CANCELLATION
by:
_____
Deputy Clerk          Date

WITNESS MY HAND AND OFFICIAL SEAL THIS 17TH DAY OF AUGUST, 2020



*Denise M. Kaminski*

DENISE KAMINSKI          99A
CLERK OF COURTS          L      JLS

**ERASURES AND ALTERATIONS VOID THIS TITLE**

# ERASURES AND ALTERATIONS VOID THIS TITLE ASSIGNMENT. (Type or print in ink.)

**ASSIGNMENT OF OWNERSHIP**    This vehicle was a (if applicable):    ☐ Law Enforcement Vehicle    ☐ Flood Vehicle    ☐ Taxi

**WARNING TO TRANSFEROR AND TRANSFEREE (SELLER AND BUYER):** You are required by law to state the true selling price. A false statement is in violation of section 2921 13 of the Revised Code and is punishable by six months' imprisonment or a fine of up to one thousand dollars, or both. All transfers are audited by the department of taxation. The seller and buyer must provide any information requested by the department of taxation. The buyer may be assessed any additional tax found to be due.

Buyer(s) Printed Name(s) _____

Buyer(s) Printed Address _____

**I (we) certify** the vehicle/watercraft/outboard motor described in this title was transferred on _____/_____/_____ for the price of $ _____ to the above listed buyer(s)

**ODOMETER CERTIFICATION:** Federal and state laws require that you state the mileage in connection with transfer of ownership. Failure to complete or providing false information may result in fines and imprisonment.

**Odometer Reading:**

☐ ☐ ☐ , ☐ ☐ ☐    Miles (no tenths)
Thousands

Seller is a minor    ☐ Yes    ☐ No    If yes, BMV 3751 Form required

**I (we) warrant** the title to be free of all liens

**I (we) hereby certify** that to the best of my (our) knowledge:

**Check one** (Mileage status information will print on the front of the title)

☐ The odometer reading reflects the actual mileage

☐ The odometer reading is in EXCESS of the mechanical limits

☐ The odometer reading is not the actual mileage (e.g., Broken odometer) - WARNING-ODOMETER DISCREPANCY

☐ Exempt from mileage disclosure (e.g., APV, Repossession, Inheritance)

Seller's Printed Name _____

X _____
Seller's Signature **(Must sign in front of Notary/Authorized Officer)**

Additional Seller's Printed Name (if applicable) _____

X _____
Additional Seller's Signature (if applicable) **(Must sign in front of Notary/Authorized Officer)**

Seller's Printed Street Address _____    City _____    State _____    Zip _____

**\*\*Note\*\*** All applicable blank spaces above must be completed before acknowledgement by notary

Sworn to and subscribed in my presence this _____ day of _____, 20_____

in _____ County, State of _____

X _____
Signature of Notary Public or other Authorized Officer by law        My commission expires _____

---

**BUYER'S ACKNOWLEDGEMENT OF ABOVE ODOMETER CERTIFICATION**

Buyer's Printed Name _____

X _____
Buyer's Signature

Co-Buyer's Printed Name (if applicable) _____

X _____
Co-Buyer's Signature (if applicable)

---

**APPLICATION FOR CERTIFICATE OF TITLE (Type or print in ink.)**

Check Type of Application(s).    ☐ Motor Vehicle    ☐ Memorandum    ☐ Watercraft    ☐ Outboard Motor    ☐ Salvage

Applicant's Printed Name _____    SSN/EIN _____

Co-Applicant's Printed Name (if applicable) _____    SSN/EIN _____

Applicant's Printed Address _____
Street _____    City _____    State _____    Zip _____    County _____

Purchase Price $ _____    Gross Tax Due $ _____    Vendor's Discount $ _____    Tax Paid $ _____

If Tax Exempt, state reason _____    Dealer Permit # _____    Vendor # _____    Trade in $ _____

**LIEN INFORMATION:** If no lien, state "none." If more than one lien, attach statement of all additional liens.

Lienholder _____    E-Lien # _____

Lienholder Address _____

Condition of vehicle/watercraft/outboard motor (check only one)    ☐ Good    ☐ Fair    ☐ Poor    ☐ Wrecked    Print Title    ☐ Yes    ☐ No

With Right of Survivorship    ☐ Yes    ☐ No    Transfer on Death    ☐ Yes    ☐ No    If yes, BMV 3811 Form required

Applicant is a minor    ☐ Yes    ☐ No    If yes, provide Date of Birth _____/_____/_____ and BMV 3751 Form required

**I (we) state** that all information contained in this application is true and correct.

X _____
Applicant's Signature **(Must sign in front of Notary/Authorized Officer)**

X _____
Co-Applicant's Signature (if applicable) **(Must sign in front of Notary/Authorized Officer)**

**\*\*Note\*\*** All applicable blank spaces above must be completed before acknowledgement by notary

Sworn to and subscribed in my presence this _____ day of _____, 20_____

in _____ County, State of _____

X _____
Signature of Notary Public or other Authorized Officer by law        My commission expires _____

LATE FEE OF $5.00 FOR FAILURE TO APPLY FOR TITLE WITHIN 30 DAYS OF ASSIGNMENT.

*To be completed by Seller and signed in front of Notary/Authorized Officer*
*Notary/Authorized Officer*
*To be completed by Applicant/Buyer and signed in front of Notary/Authorized Officer*
*Notary/Authorized Officer*

EXHIBIT C

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 20-13478-jps |
| | ) | |
| Jonathon Samuel Ethan Sawyer | ) | Chapter 7 |
| *aka* Jonathan Sawyer | ) | |
|     SSN: XXX-XX-8881 | ) | Judge JESSICA E. PRICE SMITH |
| | ) | |
| Amelia Lina Zatik | ) | <u>PNC Bank, National Association'S</u> |
| *aka* Amelia Zatik-Sawyer | ) | <u>RELIEF FROM STAY WORKSHEET</u> |
| *aka* Amelia Sawyer | ) | |
|     SSN: XXX-XX- 4969 | ) | |

I.    LOAN DATA

    A.    IDENTIFICATION OF COLLATERAL (check all that apply):

        ☐  Real Estate
            ☐  Principal Residence of Debtor(s)
            ☐  Other

        ☒  Personal Property 2017 FORD F150 VIN #1FTEW1EF7HFC36354

        ☐  Debtor(s) Chapter 13 Plan provides for surrender of the Collateral

        ☐  Other Property <- DESCRIPTION>

    B.    CURRENT VALUE OF COLLATERAL: $36,800.00

    C.    SOURCE OF COLLATERAL VALUATION:   Black Book

    D.    ORIGINAL LENDER: PNC Bank, National Association

    E.    ENTITY ENTITLED TO ENFORCE THE NOTE: PNC Bank, National

        Association

    F.    CURRENT LOAN SERVICER: PNC Bank, National Association

    G.    DATE OF LOAN: 02/22/2019

    H.    ORIGINAL PRINCIPAL AMOUNT DUE UNDER NOTE: $26,985.74

I.       ORIGINAL INTEREST RATE ON NOTE:  3.990%

J.       CURRENT INTEREST RATE:   4.240%

K.       ORIGINAL MONTHLY PAYMENT AMOUNT
          (principal and interest only for mortgage loans): $610.20

L.       CURRENT MONTHLY PAYMENT AMOUNT: $612.89

M.      THE CURRENT MONTHLY PAYMENT AMOUNT LISTED ABOVE:

        ☐    Includes an escrow amount of $<AMOUNT> for real estate taxes.
        ☐    Includes an escrow amount of $<AMOUNT>  for property insurance.
        ☐    Includes an escrow amount of $<AMOUNT>  for taxes and insurance.
        ☒    Does not include any escrow amount.

N.       DATE LAST PAYMENT RECEIVED: 04/07/2020

O.       AMOUNT OF LAST PAYMENT RECEIVED: $620.00

P.       AMOUNT HELD IN SUSPENSE ACCOUNT: $0.00

Q.       NUMBER OF PAYMENTS PAST DUE: 4

II.     AMOUNT ALLEGED TO BE DUE AS OF **August 31, 2020**

|  | Description of Charge | Total Amount of Charges | Number of Charges Incurred | Dates Charges Incurred |
|---|---|---|---|---|
| A. | PRINCIPAL | $ 19,926.93 | | |
| B. | INTEREST | $ 337.03 | | |
| C. | TAXES (**Advance: Includes Taxes & Insurance**) | $ 0.00 | | |
| D. | INSURANCE (**MIP**) | $ 0.00 | | |
| E. | LATE FEES | $ 0.00 | | |

| | | | | |
|---|---|---|---|---|
| F. | NON-SUFFICIENT FUNDS FEES | $ 0.00 | | |
| G. | PAY-BY-PHONE FEES | $ 0.00 | | |
| H. | BROKER PRICE OPINIONS | $ 0.00 | | |
| I. | FORCE-PLACED INSURANCE | $ 0.00 | | |
| J. | PROPERTY INSPECTIONS | $ 0.00 | | |
| K. | OTHER CHARGES (describe in detail and state contractual basis for recovering the amount from the debtor) | $ 0.00 | | |

TOTAL OF DEBT: $ 20,263.96

LESS AMOUNT HELD IN SUSPENSE: ($ 0.00 )

TOTAL OF DUE AS OF **August 31, 2020**: $ 20,263.96 *
*This total cannot be relied upon as a payoff quotation


This Worksheet was prepared by:


PADGETT LAW GROUP

/s/ Seth Greenhill                                        September 22, 2020
Seth Greenhill, Esq.                                            DATE
Ohio Bar # 99380
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
Seth.Greenhill@padgettlawgroup.com
*Attorney for Creditor*

<u>CERTIFICATE OF SERVICE</u>

I certify that on September 22, 2020, a true and correct copy of the Motion for Relief from Stay was served:

Via the court's Electronic Case Filing System on these entities and individuals who are listed on the court's Electronic Mail Notice List:

Richard H. Nemeth, on behalf of Debtor(s), at rnemeth@ohbklaw.com
Waldemar J. Wojcik, Trustee, at wwojcik@wojciklpa.com
United States Trustee, US Trustee, at ustpregion09.cl.ecf@usdoj.gov

And by regular U.S. mail, postage prepaid, on:

Jonathon Samuel Ethan Sawyer, Debtor, 335 Fairview Ave., Winnetka, IL 60093
Amelia Lina Zatik, Co-Debtor, 335 Fairview Ave., Winnetka, IL 60093

PADGETT LAW GROUP

/s/ Seth Greenhill
Seth Greenhill, Esq. (#99380)
Attorney for Movant